J-S09044-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARQUIS ROBINSON | : | |
| | : | |
| Appellant | : | No. 3457 EDA 2018 |

Appeal from the Judgment of Sentence Entered July 20, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004367-2017,
CP-51-CR-0011709-2016

BEFORE:  OLSON, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED MAY 12, 2021**

Marquis Robinson ("Robinson") appeals from the judgments of sentence entered following his convictions of aggravated assault, simple assault, conspiracy, possessing instruments of crime, unlawful restraint, false imprisonment, corrupting the morals of a minor, and recklessly endangering another person at CP-51-CR-0004367-2017 ("4367-2017"),[1] and third-degree murder, aggravated assault, conspiracy, unlawful restraint, possessing instruments of crime, false imprisonment, and corrupting the morals of a

_____

[1] 18 Pa.C.S.A. §§ 2702(a)(9), 2701(a), 903, 907(a), 2902(b)(1), 2903(b), 6301(a)(1)(i), 2705.

J-S09044-21

minor at CP-51-CR-0011709-2016 ("11709-2016").[2]  We affirm Robinson's

judgment of sentence.

The trial court summarized the factual history of the instant appeal as

follows:

> On July 29, 2016, medics arrived at 4633 Greene Street in
> the City and County of Philadelphia[, Pennsylvania,] to discover
> the naked, beaten body of Joyce Quaweay [("Quaweay")] laying
> on the floor of the kitchen/dining room, unconscious.  After
> numerous attempts to revive [Quaweay] over 20-30 minutes,
> medics pronounced her dead at 11:02 [a.m.]
>
> [Lieutenant John] Pendergast [("Lt. Pendergast")] of the
> Philadelphia Fire Department asked Aaron Wright [("Wright")],
> [Robinson]'s co-defendant, if [Quaweay] had been using drugs,
> since it is not typical to see a 23-year-old woman unconscious and
> unresponsive.  [] Wright stated, "I'm not gonna lie, I was beating
> her and she went unconscious."  At that point, Lt. Pendergast
> excused himself to call the police….
>
> Dr. Albert Chu [("Dr. Chu")], the Deputy Chief Medical
> Examiner of the City of Philadelphia[,] testified that he conducted
> a post[-]mortem examination of [] Quaweay.  Dr. Chu concluded
> to a reasonable degree of scientific certainty that the cause of []
> Quaweay's death was sudden cardiac death during physical
> assault and the manner of death was homicide.
>
> * * *
>
> Eight-year-old A.A.-W[.] witnessed the beating and death of
> [] Quaweay.  [] Wright is the father of A.A.-W[.]'s younger sister,
> M.W.  [A.A.-W. and Tyreesa Alsop ("Alsop"), her mother,] [] lived
> with [Wright] for many years.  [A.A.-W.] knew [Robinson] from
> [Wright] and knew them to be friends.  [A.A.-W.] also testified
> that [Robinson] lived with [] Wright and [] Quaweay at the house
> on Greene Street.  [] Quaweay and [] Wright had two children
> together, D.W., and L.W., ages 10 months and 2 years,

---

[2] 18 Pa.C.S.A. §§ 2502(c), 2702(a)(1), 903, 2902(a)(1), 907(a), 2903(a),
6301(a)(1)(i).

- 2 -

respectively. Although [A.A.-W.] no longer lived with [] Wright, she and [M.W.] spent nights at [Wright's] and [] Quaweay's house frequently because [Alsop] worked overnight shifts. [A.A.-W.] spent the night [at the] Greene Street [house] on July 28, 2016.

On July 29, 2016, [] Wright shook [A.A.-W.] awake and ordered her to make breakfast for M.W., D.W. and L.W. [A.A.-W.] immediately heard [] Quaweay screaming. [A.A.-W.] went downstairs to the kitchen/dining area to prepare breakfast, and saw [Quaweay] in the kitchen area, naked on a weight bench, with her hands handcuffed to a chain[,] and her feet zip-tied to the weight bench. A.A.-W. noticed that [] Quaweay's waist was secured to the weight bench with a weight belt, to prevent her torso from moving while her arms and feet were secured to the bench. [Robinson] and [] Wright secured [] Quaweay's waist to the weight bench to prevent her from moving her body. [A.A.-W.] proceeded to prepare cereal and milk for herself and the younger children. While preparing breakfast, [] Wright was beating [] Quaweay with a police [] baton on her back and thighs while she was tied down. [] Quaweay screamed [] while being beaten by [] Wright. A.A.[-]W. [saw] Wright hit [] Quaweay with the baton more than twenty times. [Wright] put down the police baton and [Robinson] picked it up. While [] Wright yelled at [] Quaweay, [Robinson] used the baton to hit [] Quaweay. A.A.-W. [saw Robinson] use[] both of his hands on the baton and raise it up over his head [before swinging] down on [] Quaweay's back, thighs[,] and buttocks more than [twenty] times.

[After A.A.-W. finished preparing breakfast,] Wright ordered her to sit in the kitchen while the beatings [continued]. [] Wright used scissors to cut off [] Quaweay's hair and ordered A.A.-W. to put the hair in a plastic bag. [] Quaweay told [Robinson] and [Wright] that she could not breathe. [Quaweay's] eyes were half[-]way open. [] Wright poured bottles of water on [Quaweay's] face at least three times[, and Quaweay] stopped breathing. [Robinson and Wright] removed [] Quaweay from the weight bench and laid her on the floor. [] Wright and [] Robinson performed CPR on her to no avail.

[Alsop] arrived [at] the house sometime after A.A.-W. made the breakfast, around 9:00 [a.m.] [] Alsop observed [] Quaweay on [*sic*] secured to the weight bench, with her hands and feet bound. [Alsop watched as Robinson] and [] Wright would occasionally reposition [Quaweay's] body and they used a heavy,

- 3 -

long chain to secure her to the bench. … [At some point,] Wright ask[ed] Quaweay, "Why are you going through with this?" and [] Quaweay responded, "Because I don't listen, I'm wicked." [] Alsop was in the house for more than an hour when she heard [] Quaweay say she could not breathe. … Wright told [] Alsop to call 911. Once [Alsop] did that, [Robinson] left the house before police arrived.

[A.A.-W.] was also a victim of this abuse at the hands of [Robinson] and [Wright]. When [A.A.-W. was] told to "get on the bench," she knew that meant, "I was going to get beat." These beatings took place "many times." One such incident happened because her younger sister[, M.W.,] put a tablet into A.A.-W.'s book bag. A.A.-W. was restrained face[-]down on the weight bench with her hands handcuffed to the bench[,] and her waist secured with the weight belt around the weight bench and her body. [Robinson] and [Wright] each took turns beating [A.A.-W.] with a belt. Each man took turns hitting her with the belt more than [twenty] times. One of these beatings left [A.A.-W.] with a permanent scar to her thigh. … A.A.-W. did not immediately report these beatings. [] M.W. reported to [] Tina Butler ("Butler") that she had [also] been the victim of these assaults weeks after [Robinson] and [Wright had] killed [] Quaweay. The children were no longer living with [Alsop at the time] and [they] told [] Butler what happened to them.

[At the time of the incident, Robinson]'s weight [] was 225 pounds and his height was 5'9". [] Wright was 200 pounds and 5'11". [] Wright was a police officer at Temple University Police Department and he stopped working there in 2012. [] Robinson was a Temple University Police Officer until the time of his arrest on the murder case.

Trial Court Opinion, 9/23/19, 2-6 (citations and footnotes omitted).

On January 6, 2017, and on May 30, 2017, Robinson was charged via

Informations with the above-mentioned offenses, at 11709-2017 and 4367-

2017, respectively.[3, 4]  On June 22, 2017, the Commonwealth filed Motions to Consolidate Robinson's cases, 4367-2017 and 11709-2016, and Robinson's cases with Wright's cases for trial.  After a hearing, the trial court granted the Commonwealth's Motions.  Robinson and Wright were tried together, and on May 2, 2018, following a bench trial, Robinson was convicted of the above-mentioned offenses.[5]  The trial court deferred sentencing for the purposes of preparing a pre-sentence investigation report ("PSI") and a mental health evaluation.

On July 20, 2018, the trial court sentenced Robinson, at 11709-2016, to consecutive prison terms of 20 to 40 years for his conviction of third-degree murder, 5 to 20 years for his conviction of conspiracy, 2½ to 5 years for his conviction of unlawful restraint, 2½ to 5 years for his conviction of possessing an instrument of crime, and 2½ to 5 years in prison for his conviction of corrupting the morals of a minor.  Robinson received no further penalty for his conviction of false imprisonment at 11709-2016, and his conviction of aggravated assault merged with his conviction of third-degree murder. At

_____

[3] The offenses relating to A.A.-W. are docketed at 4367-2017, and the offenses related to Quaweay are docketed at 11709-2016.

[4] Wright was similarly charged at Docket Number CP-51-CR-0011708-2016 for the murder of Quaweay, and at Docket Number CP-51-CR-0004368-2017 for the abuse and beating of A.A.-W.

[5] Wright was also convicted of third-degree murder and related offenses. **See Commonwealth v. Wright**, 240 A.3d 964 (Pa. Super. 2020) (unpublished memorandum).

- 5 -

4367-2017, the trial court sentenced Robinson to consecutive prison terms of 10 to 20 years for his conviction of aggravated assault, 5 to 20 years for his conviction of conspiracy, 2½ to 5 years for his conviction of possessing an instrument of crime, and 5 to 10 years for his conviction of unlawful restraint. Robinson received no further penalty for his convictions of false imprisonment, corrupting the morals of a minor, and recklessly endangering another person. Robinson's conviction of simple assault merged with his conviction of aggravated assault. Robinson's sentences at 4367-2017 were imposed consecutively to Robinson's sentence at 11709-2016, resulting in an aggregate prison term of 55 to 130 years.

Robinson filed a timely post-sentence Motion listing both 4367-2017 and 11709-2016, alleging, *inter alia*, that his conviction of aggravated assault in 11709-2016 was against the weight of the evidence, and that the trial court abused its discretion when it sentenced Robinson in excess of the Standard Sentencing Guidelines and failed to consider his character and history. On November 26, 2018, the trial court denied Robinson's Motion by operation of law, and entered two separate Orders, one at each docket number.

On November 28, 2018, Robinson filed a single, timely, Notice of Appeal listing both 4367-2017 and 11709-2016.[6] On January 1, 2019, this Court issued a Rule to Show Cause why we should not quash the appeal based on

---

[6] Additionally, on December 18, 2018, Robinson filed a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

our Supreme Court's decision in **Commonwealth v. Walker**, 185 A.3d 969, 971 (Pa. 2018). **See** Order, 1/17/19. On January 20, 2019, Robinson filed a Response in which he conceded that his Notice of Appeal did not comply with **Walker** and Pa.R.A.P. 341(a). Robinson argued, however, that this Court should refuse to quash the appeal in the interests of judicial economy and justice. Additionally, in his Response, Robinson requested, *inter alia*, that he be allowed to file "two amended Notices of Appeal containing two separate [] Docket Numbers." On March 15, 2019, this Court discharged the Rule to Show Cause, and, ultimately,[7] referred Robinson's Application for Relief to the merit's panel. **See** Order, 3/15/19; Order, 8/27/19.

On December 28, 2019, Robinson filed a Motion to Remand for a **Grazier**[8] Hearing and for Suspension of the Briefing Schedule. On January 17, 2020, this Court granted Robinson's Motion and remanded the matter to the trial court to determine whether Robinson's waiver of counsel was knowing, intelligent and voluntary. **See** Order, 1/17/20, at 1-2. Subsequently, the trial court appointed Robinson new appellate counsel. Following a continuance, new counsel filed a supplemental Rule 1925(b)

---

[7] In the March 15, 2019 Order, this Court directed Robinson to file his "request for relief" in a separate filing. **See** Order, 3/15/19. On July 21, 2019, Robinson filed his "Application for Relief" requesting the same relief as detailed in his January 20, 2019 "Response." **See** Application for Relief, 7/21/19.

[8] **Commonwealth v. Grazier**, 713 A.2d 1 (Pa. 1998).

- 7 -

Concise Statement, which the trial court addressed in a supplemental Rule 1925(a) Opinion.

At the outset, prior to addressing Robinson's substantive claims, we first must determine whether Robinson's Notice of Appeal complies with Pa.R.A.P. 341 and our Supreme Court's decision in **Walker**. The Official Note to Pa.R.A.P. 341(a) provides, in relevant part, as follows:

> Where … one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed. … **Commonwealth v. C.M.K.**, 932 A.2d 111, 113 & n.3 (Pa. Super. 2007) (quashing appeal taken by single notice of appeal from order on remand for consideration under Pa.R.Crim.P. 607 of two persons' judgments of sentence).

Pa.R.A.P. 341, Official Note.

In **Walker**, our Supreme Court held that pursuant to Rule 341, "where a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each case." **Walker**, 185 A.3d at 971. Our Supreme Court concluded that "[t]he Official Note to Rule 341 provides a bright-line mandatory instruction to practitioners to file separate notices of appeal…. The failure to do so requires the appellate court to quash the appeal." **Id.** at 976-77. Our Supreme Court applied its holding prospectively to appeals filed after June 1, 2018. Thus, where one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed. **Commonwealth v. C.M.K.**, **supra**.

Nevertheless, it is well-settled that the failure to file a timely appeal as a result of a breakdown in the court system is an exception to that general rule. *See Commonwealth v. Braykovich*, 664 A.2d 133, 136-38 (Pa. Super. 1995) (discussing cases and holding failure of clerk of courts to advise defendant that his post-sentence motion had been denied by operation of law excused late-filed appeal). More recently, this Court has "declined to quash an appeal when the defect resulted from an appellant's acting in accordance with misinformation relayed to him by the trial court." *Commonwealth v. Larkin*, 235 A.3d 350, 353 (Pa. Super. 2020) (*en banc*) (citing *Commonwealth v. Stansbury*, 219 A.3d 157, 159-60 (Pa. Super. 2019)); *see also Commonwealth v. Patterson*, 940 A.2d 493, 498 (Pa. Super. 2007) (compiling cases in which "a court breakdown occurred in instances where the trial court, … either failed to advise [a]ppellant of his post-sentence and appellate rights[,] or misadvised him.").

Instantly, at sentencing, the trial court requested that Robinson's trial counsel advise Robinson of his appellate rights on the record. Robinson's trial counsel stated as follows:

> [Defense Counsel]: After the denial of the post-sentence motion, whether [the trial court] does it expressly or whether it happens by operation of law, you have 30 days in which to file **an appeal** to the Superior Court. The appeal must be in writing. You have an absolute right to have an attorney represent in the filing of the appeal.
>
> [] Robinson, I know you want **an appeal**, and I will take care of that. …

> [Y]ou should not file anything on your own because, for example, if you were to file **a notice of appeal** tomorrow, then what that would do is it would take jurisdiction away from [the trial court]. … If you file **a notice of appeal** before [the trial court] decides upon post-sentence motions, you will have waived any issue pertaining to the discretionary aspect of your sentencing, or any issue with regard to the weight and the credibility of the evidence.

N.T. (Sentencing Hearing), 7/20/18, at 67-68 (emphasis added). After the above explanation, the trial court did not correct any of trial counsel's statements. *Id.* at 68-69. Moreover, the trial court, in its Orders denying Robinson's post-sentence Motion, still did not correct the misstatements of trial counsel at sentencing, but rather, stated as follows: "You have the right to appeal to the appropriate appellate court within 30 days, from the date of this Order. Notice of Appeal must be filed at the Appeal Unit[.]" Order at Docket Number CP-51-CR-0004367-2017, 11/26/18; *see also* Order at Docket Number CP-51-CR-0011709-2016, 11/26/18.

We conclude that the misstatements of both trial counsel and the trial court constituted a breakdown in court operations such that we may overlook the defective nature of Robinson's timely Notice of Appeal. *See Stansbury*, 219 A.3d at 160 (stating that a breakdown in court operations had occurred where the trial court advised defendant that he only need file a *single* notice of appeal); *see also Larkin*, 235 A.3d at 354 (stating that appellant had been

misinformed by the trial court where the trial court stated he only need to file

"an appeal."). Therefore, we will address the merits of Robinson's appeal.[9]

Robinson now raises the following claims for our review:

1. Did the trial court err and abuse its discretion when it consolidated [11709-2016] and [4367-2017] into one trial[,] where evidence of one offense would not have been admissible in a trial on the other, and where the two offenses were not part of a common plan, scheme or design, and a joint trial was highly prejudicial to the defense?

2. Did the trial court err and abuse its discretion when it consolidated [11709-2016] and [4367-2017] into one trial[,] where evidence of motive had no factual basis because there was no evidence that the beating of [] Quaweay grew out of the beating of A.A.-W[.,] and there was no specific, logical connection between the two incidents that took place over a year apart[,] and the joint trial was highly prejudicial to the defense?

3. Was [Robinson's] conviction for [a]ggravated [a]ssault [] in connection with the beating of A.A-W[.] based upon sufficient evidence and against the weight and credibility of the evidence where the Commonwealth did not sustain its burden of proving beyond a reasonable doubt the element of [a]ggravated [*sic*] that [Robinson] caused or had a specific intent to cause serious bodily injury to A.A[]-W.[?]

4. Did the [trial] court abuse its discretion when it sentenced [Robinson] to 55 to 110 [*sic*] years [in prison,] and all the sentences were the statutory maximum and were imposed to run consecutively[,] which were manifestly excessive and

_____

[9] Additionally, we deny Robinson's Application for Relief because, by the time Robinson had requested this relief, time had already expired for him to file timely, **Walker**-compliant notices of appeal. **See** Pa.R.A.P. 903(a) (providing that a notice of appeal "shall be filed within 30 days after the entry of the order from which the appeal is taken"); **see also** Pa.R.A.P. 105(b) (providing that, generally "[a]n appellate court … cannot enlarge the time for filing a notice of appeal."); **Stansbury**, 219 A.3d at 159-60 (stating that this Court cannot grant a motion to remand to correct defects in a notice of appeal where the 30-day time period to appeal had already expired).

unreasonable as far outside the Standard Sentencing Guidelines without sufficient reasons for the upward deviation[,] and it failed to give due consideration to [Robinson's] character, remorse, acceptance of responsibility[,] and other mitigating factors as well as individualize his sentence in relation to the conduct of his co-defendant?

5. Did the [trial] court err by imposing consecutive sentences on two counts of conspiracy constitute an illegal sentence[,] where a person who agrees to commit a number of crimes is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement[,] and thus[,] in order to be convicted and sentenced on two conspiracies there would [*sic*] have to be two separate conspiratorial relationships and under the totality of the circumstances a conviction for only one count of conspiracy was supported by the facts because the crimes involved the same actors, were at the same location, the same method was employed[,] and the same object was pursued?

Brief for Appellant at 11-12 (issues renumbered).

We address Robinson's first two claims together, as they are related, and Robinson addressed them together in his brief. *Id.* at 18-29. Robinson argues that the trial court erred in consolidating his cases at 11709-2016 and 4367-2017 pursuant to Pa.R.Crim.P. 582, because the evidence of one crime would not be admissible in a trial for the other under Pa.R.E. 404(b), relating to character evidence. *Id.* at 18-19. In particular, Robinson claims that the evidence in both cases could not be used to prove a common plan, scheme or design, or motive. *Id.* at 18-24. In support of this claim, Robinson asserts that the beatings of Quaweay and A.A.-W. were too dissimilar, because Quaweay and A.A.-W. were part of different age groups; Robinson used different items to beat Quaweay and A.A.-W.; and the evidence only supported one beating of A.A.-W. compared to several beatings of Quaweay.

- 12 -

*Id.* at 21-24. Robinson concedes that both A.A.-W. and Quaweay are both female, both were stripped of their clothing and bound to a weight bench with zip-ties and a weight belt, that the items utilized by Robinson and Wright were items commonly used by police officers in their occupation, and that other children were present in the home during the beatings of both Quaweay and A.A.-W. *Id.*

Additionally, Robinson claims that the trial court erred in determining that the evidence in both of his cases would be admissible in the other pursuant to Pa.R.Crim.P. 582, relating to joinder. *Id.* at 19-21. Robinson argues that the trial court conflated the facts of the assault on A.A.-W. *Id.* at 25. Further, Robinson claims that he suffered actual prejudice by the trial court's joinder of his cases because "the facts of the numerous beatings by [Wright] were attributed to [Robinson]." *Id.* at 25-29.

At the outset, we must determine whether Robinson has preserved these claims for our review. We observe that Robinson did not file a response to the Commonwealth's Motion to Consolidate, but rather joined Wright's Response. *See* N.T. (Pre-Trial Motions Hearing), 10/26/17, at 5. Additionally, Wright's Response is not part of the certified record before this Court, and therefore, we could find that Robinson has waived these claims. *See Commonwealth v. Preston*, 904 A.2d 1, 6-7 (Pa. Super. 2006) (explaining that it is the appellant's responsibility to ensure that the record certified on appeal is complete, that matters not of record may not be considered on

- 13 -

appeal, and that this Court may not consider any documents which are not included in the certified record).  Nevertheless, the trial court, in its Opinion, was able to aptly address Robinson's claims regarding the joinder of Robinson's cases.  **See** Trial Court Opinion, 9/23/19, at 8-10.  Thus, we will address the merits of those claims.

Whether to join or sever offenses for trial is within the trial court's discretion and will not be reversed on appeal absent a manifest abuse of discretion, or prejudice and clear injustice to the defendant.  ***Commonwealth v. Newman***, 598 A.2d 275, 277 (Pa. 1991).

The Rules of Criminal Procedure, in relevant part, provide:

**Rule 582.  Joinder--Trial of Separate Indictments of Informations**

(A) Standards

(1) Offenses charged in separate indictments or informations may be tried together if:

(a) the information of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

(b) the offenses charged are based on the same act or transaction

(2) Defendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.

Pa.R.Crim.P. 582(A)(1)-(2).

**Rule 583. Severance of Offenses or Defendants**

The court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together.

Pa.R.Crim.P. 583.

Under Rule 583, the prejudice the defendant suffers due to the joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime. *Commonwealth v. Lauro*, 819 A.2d 100, 107 (Pa. Super. 2003).

The prejudice of which Rule [583] speaks is, rather, that which would occur if the evidence tended to convict [the] appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence. Additionally, the admission of relevant evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself.

*Id.*

When determining whether a court should join or sever charges, a court must apply the following test:

[1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these questions are in the affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Commonwealth v. Collins*, 703 A.2d 418, 422 (Pa. 1997). Pursuant to this test, "a court must first determine if the evidence of each of the offenses would be admissible in a separate trial for the other." *Id.* Evidence of other crimes

- 15 -

is not admissible solely to show the defendant's bad character or propensity to commit crimes. **Commonwealth v. Dozzo**, 991 A.2d 898, 902 (Pa. Super. 2010); **see also** Pa.R.E. 404(b)(1) (providing that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.").

Evidence of other crimes is admissible to demonstrate:

(1) motive; (2) intent; (3) absence of mistake or accident; (4) **a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others**; or (5) to establish the identity of the person charged with the commission of the crime on trial, in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other.

**Commonwealth v. Janda**, 14 A.3d 147, 156 (Pa. Super. 2011) (emphasis added). "Additionally, evidence of other crimes may be admitted where such evidence is part of the history of the case and forms part of the natural development of the facts." **Dozzo**, 991 A.2d at 902 (citation omitted).

In order for evidence of other criminal activity to be admissible to establish a common scheme, two conditions must be satisfied: "(1) the probative value of the evidence must outweigh its potential prejudice against the defendant; and (2) a comparison of the crimes must establish a logical connection between them." **Commonwealth v. Arrington**, 86 A.3d 831, 842 (Pa. 2014) (quotations and internal citations omitted).

The trial court addressed Robinson's claims as follows:

The evidence of [Robinson]'s beatings of A.A.-W. and [] Quaweay establish a common plan, scheme and design, as well as the motive and intent of [Robinson] and [Wright] in beating both victims.

* * *

In the instant cases, [Robinson] and [Wright] engaged in nearly identical behavior towards the murder victim, [] Quaweay and the assault victim, 8-year-old A.A[.]-W. The similarities are:

(1) Both victims are female; (2) both were stripped of their clothing after perceived misbehavior; [] Quaweay allegedly did not give one of the assailants money for a haircut, she allegedly "messed up his car," "pulled a gun on him," and was forced to say that she was "wicked" and that she "didn't listen" as [Robinson] and [Wright] beat her to death and A.A.-W. testified that on one occasion, she was beaten after clearing [] Wright's plate and napkin and putting the napkin in the sink and not the trash can; (3) [Robinson] and [Wright] forced both victims to get onto a weight bench; (4) [t]hey tied both victims' hands and feet to the weight bench with zip-ties that one often sees police officers use in lieu of handcuffs; (5) [Robinson] and [Wright] used a weight belt to tie each victim to the weight bench to prevent their bodies from moving during the beatings; (6) [Robinson] and [Wright] used police tools (asps, handcuffs, and zip ties) to beat both victims about their bodies; (7) [Quaweay and A.A.-W.] were beaten in areas of their bodies that would not be seen in public[:] their back, buttocks, legs, not the face head or arms; (8) [i]n both cases, [Robinson] and [Wright] engaged in these beatings together; (9) [Robinson] and [Wright] made other females, including children, watch the beatings on the weight bench.

These similarities demonstrate that [Robinson] and [Wright] used the same violence, restraint and humiliation technics [*sic*] to punish females who they believed had "misbehaved" …. This common scheme of stripping a woman and a young girl naked, tying them down to a weight bench, using tools common to their training as police officers to both tie [Quaweay and A.A.-W.] down and beat them, is their unique[] signature method of punishing those who they perceive have "misbehaved." These similarities are more than sufficient to establish a common plan, scheme and

- 17 -

design[,] and therefore would be admissible in separate trials. Pa.R.Crim.P. []582(A)(1)(a).

[Robinson] and [Wright] elected to have their cases heard by a judge, sitting without a jury. Any concern that a fact-finder would have been unable to separate the offenses is virtually mooted by this being a bench trial. There is no basis to conclude that the [trial] court could not keep separate the facts of the two incidents so as to avoid both confusion and prejudice. No relief is due.

Trial Court Opinion, 9/23/19, at 9-10 (citations omitted).

Our review confirms the trial court's reasoning and analysis. The evidence presented at trial revealed that Robinson's beatings of both Quaweay and A.A.-W. were substantially similar and admissible to show a "common scheme, plan or design." *See Arrington*, *supra*; *see also Newman*, 598 A.2d at 278 (stating that the establishment of a common scheme, plan or design "requires only that there are shared similarities in the details of each crime."). Instantly, Robinson and Wright beat both Quaweay and A.A.-W., usually in front of the younger children, whenever they "misbehaved" by restraining them to a weight bench with a weight belt and zip ties, then taking turns beating Quaweay and A.A.-W. on their buttocks, thighs, and back with a police baton or belt. *See* Trial Court Opinion, 9/23/19, at 3-6, 9-10; *see also* N.T. (Bench Trial), 4/30/18, at 46-50, 55-60, 64, 79-80; N.T. (Bench Trial), 5/2/18, at 13, 15-16, 39, 88-90, 92-93, 96, 111-12. Thus, evidence of Robinson's crimes would have been admissible as evidence of a common scheme, plan or design. *See Arrington*, *supra*; *Newman*, *supra*.

Additionally, Robinson was convicted following a bench trial, and thus, there were no concerns regarding jury confusion, and it is presumed that the trial court was capable of separating the evidence to properly consider each criminal charge. ***See Commonwealth v. O'Brien***, 836 A.2d 966, 972 (Pa. Super. 2003) (explaining that a trial held before a trial court rather than a jury "minimizes if not eliminates the potential for prejudice.").

Moreover, as the trial court noted in its Opinion, Robinson has not established that he was unduly prejudiced by the trial court's decision to consolidate his cases. ***See*** Trial Court Opinion, 9/23/19, at 9-10; ***see also Newman***, 598 A.2d at 278 (stating that in order to establish prejudice, an appellant must establish that he was convicted because of his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence). Because evidence of each of Robinson's offenses were admissible in a separate trial for the other, and the trial court sat as fact-finder, joinder was appropriate and did not unduly prejudice Robinson. ***See O'Brien***, ***supra***; ***see also Commonwealth v. Johnson***, 236 A.3d 1141, 1150 (Pa. Super. 2020) (emphasizing this Commonwealth's policy to encourage joinder, especially where "the result will be to avoid the expensive and time consuming duplication of evidence.") (citation omitted). Based upon the foregoing, the trial court did not err in consolidating Robinson's cases, and we cannot grant Robinson relief on these claims.

In his third claim, Robinson raises two distinct challenges, which we will address separately. First, Robinson claims that the Commonwealth failed to present sufficient evidence that Robinson intended to cause serious bodily injury to A.A.-W. Brief for Appellant at 30-31. Robinson directs our attention to the Reproduced Record of A.A.-W.'s Video Interview,[10] and argues that it does not support the trial court's determination that Robinson caused the permanent scarring on A.A.-W.'s thigh. *Id.* at 31-33. Additionally, Robinson claims that he did not pass the belt back and forth with Wright, but rather, one of them would place the belt down, and the other would pick up the belt before resuming A.A.-W.'s beatings. *Id.* at 32-33.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for a fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of

---

[10] We note that A.A.-W.'s video interview does not appear in the certified record before us, and thus we cannot consider it on appeal. *See Commonwealth v. Brown*, 161 A.3d 960, 968 (Pa. Super. 2017) (stating that "our review is limited to those facts which are contained in the certified record and what is not contained in the certified record does not exist for purposes of our review") (internal quotations omitted); *see also Commonwealth v. Holston*, 211 A.3d 1264, 1276 (Pa. Super. 2019) (stating that it is the appellant's responsibility to ensure that the certified record on appeal is complete).

proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence received must be considered. Finally, the [trier] of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Smith**, 97 A.3d 782, 790 (Pa. Super. 2014) (citation omitted).

The Crimes Code, in relevant part, provides as follows:

**§ 2702. Aggravated Assault**

> **(a) Offense defined.--**A person is guilty of aggravated assault if he:
>
> * * *
>
> (9) attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to a child less than 13 years of age, by a person 18 years of age or older.

18 Pa.C.S.A. § 2702(a)(9). Additionally, the Crimes Code defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

In its Opinion, the trial court addressed Robinson's sufficiency claim as follows:

> In the present case, there is overwhelming evidence of [Robinson]'s intent to cause serious bodily injury to A.A[.]-W. In this case, [Robinson] and [Wright] handcuffed A.A.-W[.]'s wrists, tied her feet with zip ties and attached her with a belt around her waist and to a weight bench, without the protection/padding of

- 21 -

clothing. She sustained beatings while on the weight bench by two grown men (5'9" [and] 225 pounds, 5'11" [and] 200 pounds) who took turns beating her with a belt. [Robinson and Wright] would passed [*sic*] the belt back and forth to each other so they could each use the belt on her body. [A.A.-W.] recalled being hit by [Robinson] and [Wright] with a belt and belt buckle more than 40 times. A.A.-W. has a permanent mark on her leg from when she [was] hit with a weapon by [Robinson] and [Wright]. Each of these instances is more than sufficient to prove [Robinson]'s intent to inflict serious bodily injury to A.A.-W. The repetitive blows with an instrument of crime to the naked, restrained, small body of an 8-year-old girl by two adult men, establish that the only intent [Robinson] had was to cause serious bodily injury to "punish" her for alleged misbehavior. The fact that there is only one permanent mark to her body in no way takes away from the obvious intent of [Robinson] and [Wright], but rather speaks to the resilience of the child and her ability to heal from these injuries.

Trial Court Opinion, 9/23/19, at 14-15 (citations omitted).

Our review of the record confirms the trial court's analysis and conclusion, and we affirm on this basis in regards to Robinson's sufficiency claim. **See id.**; **see also Smith**, **supra**.

Next, Robinson challenges his conviction of aggravated assault of A.A.-W. as against the weight of the evidence. Brief for Appellant at 34-35. Robinson claims that the Commonwealth failed to present enough evidence to "prove beyond a reasonable doubt that [Robinson] had the specific intent to cause serious bodily injury to A.A.-W." **Id.** at 35.

We observe that in his Rule 1925(b) Concise Statement, Robinson conflates his sufficiency and weight claims. **See** Pa.R.A.P. 1925(b) Concise Statement, 12/16/18, at 1 (wherein Robinson raises both of these claims together and states that his conviction is "based upon insufficient evidence"

and "the Commonwealth did not sustain its burden of proving beyond a reasonable doubt that [Robinson] caused or attempted to cause serious bodily injury to [A.A.-W.]"); *See* Pa.R.A.P. 1925(b)(4)(ii) (stating that "[t]he Statement shall concisely identify each error that the appellant attends to assert with sufficient detail to identify the issue to be raised for the judge."). Further, in his brief, Robinson's claim that there was "a lack of evidence to prove beyond a reasonable double that [Robinson] had the specific intent to cause serious bodily injury[]" is more properly a sufficiency challenge. Brief for Appellant at 35. Indeed, it is the same sufficiency challenge already raised, which we addressed above. Accordingly, because Robinson has failed to develop his weight claim, this issue is waived. *See Commonwealth v. Sexton*, 222 A.3d 405, 416 (Pa. Super. 2019) (stating that appellant waived his challenge to the weight of the evidence where the appellant's brief conflated weight and sufficiency claims and did not otherwise develop his weight claim); *see also* Pa.R.A.P. 2119(a) (providing that an appellant's argument shall include "such discussion and citation of authorities as are deemed pertinent.").[11]

In his fourth claim, Robinson argues that the trial court imposed an "excessive sentence based solely on the seriousness of the offense[s]," and

---

[11] Even if Robinson had not waived this challenge, we would affirm for the same reasons as the trial court in its Opinion. *See* Trial Court Opinion, 9/23/19, at 14-15.

failed to consider all of the relevant sentencing factors under 42 Pa.C.S.A. § 9721(b). Brief for Appellant at 36.

Robinson challenges the discretionary aspects of his sentence, from which there is no absolute right to appeal. *See Commonwealth v. Mastromarino*, 2 A.3d 581, 585 (Pa. Super. 2010) (stating that a claim that an aggregate sentence involving the imposition of consecutive sentences is excessive, challenges the discretionary aspects of sentencing). Rather, when an appellant challenges the discretionary aspects of his sentence, we must consider his brief on this issue as a petition for permission to appeal. *Commonwealth v. Yanoff*, 690 A.2d 260, 267 (Pa. Super. 1997); *see also Commonwealth v. Tuladziecki*, 522 A.2d 17, 18 (Pa. 1987). Prior to reaching the merits of a discretionary sentencing issue,

> [this Court conducts] a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

> * * *

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advance[s] a colorable argument that the sentencing judge's actions were either: (1) inconsistent with the specific provisions of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (quotation marks and some citations omitted).

Here, Robinson timely filed his Notice of Appeal, raised his discretionary aspects of a sentencing claim in his Post-Sentence Motion, and properly included a Rule 2119(f) Statement in his brief. Therefore, we will determine whether there is a substantial question requiring us to review the discretionary aspects of his sentence.

In his Rule 2119(f) Statement, Robinson argues that the trial court abused its discretion in imposing consecutive, statutory maximum sentences. *See* Brief for Appellant at 10. Robinson claims that the trial court failed to properly consider his mitigating circumstances and all of the sentencing factors pursuant to 42 Pa.C.S.A. § 9721(b), and instead focused on the seriousness of the offenses. Brief for Appellant at 10. We conclude that Robinson has raised a substantial question for our review. *See Moury*, 992 A.2d at 171-72 (stating that "[t]he imposition of consecutive, rather than concurrent sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh."); *see also Commonwealth v. Bonner*, 135 A.3d 592, 604 (Pa. Super. 2016) (concluding that a claim of an excessive sentence, based upon the imposition of consecutive, standard range sentences, raises a substantial question). Additionally, Robinson's claim that the trial court failed to consider any mitigating evidence when imposing his consecutive statutory maximum

sentences, raises a substantial question. *See Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (stating that a claim of an excessive sentence, in conjunction with a claim that the trial court failed to consider relevant mitigating factors, raises a substantial question). Accordingly, we will review the merits of Robinson's discretionary sentencing claim.

> We adhere to the following standard of review:
>
> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Robinson*, 931 A.2d 15, 26 (Pa. Super. 2007) (citation omitted).

"In every case in which the court imposes a sentence for a felony … the court shall make as part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." 42 Pa.C.S.A. § 9721(b); *see also Commonwealth v. Mouzon*, 812 A.2d 617, 620-21 (Pa. 2002) (plurality). The Sentencing Code also provides that "the [trial] court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs

of the defendant." 42 Pa.C.S.A. § 9721(b); ***see also Commonwealth v. McClendon***, 589 A.2d 706, 713 (Pa. Super. 1991) (stating that "the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation."). "A sentencing court may consider any legal factor in determining that a sentence in the aggravated range should be imposed. … [T]he sentencing judge's statement of reasons on the record must reflect this consideration…." ***Commonwealth v. Stewart***, 867 A.2d 589, 592-93 (Pa. Super. 2005) (citation omitted). Further, the trial court must consider the Sentencing Guidelines. ***Commonwealth v. Sheller***, 961 A.2d 167, 190 (Pa. Super. 2008).

In its Opinion, the trial court addressed Robinson's claim as follows:

> The required [PSI] and mental health evaluations were submitted to and read by th[e c]ourt. The court stated on the record[] that [Robinson]'s guidelines were included in the Commonwealth's Sentencing Memorandum, which the court indicated it had read. The court then stated on the record that [Robinson]'s Prior Record Score was zero. The [Commonwealth] provided a chart outlining all of the ranges of sentencing available to the court with the "Deadly Weapon Used" as well as the Offense Gravity Scores. In addition, the Assistant District Attorney read a letter of Victim Impact testimony of A.A.-W[.] and heard the testimony from [Quaweay's family.] The court also heard from [Robinson]'s mother[.] [Robinson] spoke on his own behalf, apologized, and asked for forgiveness. The court listened to arguments from defense counsel concerning the rehabilitation needs of [Robinson.]

> * * *

> Moreover, the court did state its reasoning on the record and its reason for going outside the Sentencing Guidelines. Some of the reasons that the court went outside the guidelines are based upon factors such as the **methodical, torturous, brutal**

- 27 -

**methods** [**Robinson**] **and** [**Wright**] **used to assault** [] **Quaweay**, beating her so badly it caused her to die. The brutality of this crime was made clear in the photographs of the victim's body that were entered into evidence at the trial and subsequently at the sentencing hearing. Other factors that take this crime out of the guidelines include the fact that [**Robinson**] **and** [**Wright**] **made a child participate in this horror by requiring A.A.-W. to sit in the same room and watch them commit these atrocities**. **They made her clean up the hair they had chopped off the dying victim's head. They made the child watch as both [Robinson] and [Wright] each beat her more than 20 times with a police asp, swinging it with both hands over their heads and striking downward, while** [] **Quaweay was handcuffed, chained**[,] **and belted to the bench.** [**A.A.-W.**] **was witness to the fact that** [] **Quaweay said she couldn't breathe**[,] and she watched as the solution put forward by [Robinson] and [Wright] was to throw water on her face multiple times. All of these actions, in addition to the acts mentioned in the Sentencing Hearing, firmly place this case well outside the guidelines.

The same can be said for the actions taken by [Robinson] regarding A.A.-W.'s beating. **The heavy metal chains, metal handcuffs, zip ties**[,] **and leather weight belt used to restrain the victim to prevent her from moving while being struck repeatedly with weapons exceeded the means necessary to accomplish the goal of "punishment."** Because of these factors, in addition to the factors mentioned above and at the sentencing hearing … the court went above the guidelines.

* * *

In light of the above facts of these two cases, the total sentences of 55-130 [years in prison] is not excessive in light of the brutality, torture, and trauma delineated above. There were two victims. Each case was treated individually as separate crimes. No relief is due.

Trial Court Opinion, 9/23/19, at 18-21 (emphasis added, footnotes and

citations omitted).

Additionally, at the Sentencing Hearing, the trial court stated that it considered the fact that 911 was called, and that Wright and Robinson attempted to perform CPR on Quaweay. N.T. (Sentencing Hearing), 7/20/18, at 53. Further, the trial court "considered rehabilitation," but also considered that Robinson was a police officer "who [had] sworn to protect the community," and had failed in this oath in regards to Quaweay and A.A.-W. *Id.* at 54-55. Ultimately, the trial court concluded that there was no mitigation that could overcome the aggravating factors of the beatings, torture, abuse, degradation, humiliation, and ultimately, murder committed by Robinson. *Id.* at 49-59.

Our review confirms that the trial court considered all the relevant sentencing factors and set forth its reasons for imposing consecutive, statutory maximum sentences. *See* 42 Pa.C.S.A. § 9721(b); *see also Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa. Super. 2009) (stating that "[t]he sentencing court merely chose not to give the mitigating factors as much weight as [a]ppellant would have liked[.] We cannot re-weigh the sentencing factors and impose our judgment in place of the sentencing courts."). Moreover, the trial court had the benefit of a PSI, which the trial court expressly stated it had considered. N.T. (Sentencing Hearing), 7/20/18, at 6; Trial Court Opinion, 9/23/19, at 18-19; *see also Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988) (explaining that where a sentencing judge considered the PSI, it is presumed that they are "aware of relevant

information regarding the defendant's character and weighed those considerations along with mitigating statutory factors."). Therefore, we conclude that the trial court did not abuse its discretion in imposing Robinson's sentence, and that Robinson's challenge to the discretionary aspects of his sentence is without merit. *See Macias*, *supra*; *see also Robinson*, *supra*.

In his fifth claim, Robinson claims that his sentence is illegal because the trial court imposed consecutive sentences for his two convictions of conspiracy. Brief for Appellant at 40. Robinson argues that in order to support two conspiracy convictions, "there must be two different separate agreements to support each conviction." *Id.* at 41. Robinson asserts that the Commonwealth argued throughout trial that there was a single conspiracy between Robinson and Wright. *Id.* at 41-43. Robinson contends that 18 Pa.C.S.A. § 903(c) prohibits multiple sentences for a single conspiracy. *Id.* at 43-44.

Our standard of review of this claim is well settled: "Issues relating to the legality of a sentence are questions of law[.] … Our standard of review over such questions is *de novo* and our scope of review is plenary." *Commonwealth v. Wolfe*, 106 A.3d 800, 802 (Pa. Super. 2014) (citation omitted). Pursuant to 18 Pa.C.S.A. § 903(c), "[i]f a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship." 18 Pa.C.S.A. § 903(c). In determining whether

a single conspiracy or multiple conspiracies occurred, this Court applies a totality of the circumstances test and considers the following factors:

> [T]he number of overt acts in common; the overlap of personnel; the time period during which the alleged acts took place; the similarity in methods of operation; the locations in which the alleged acts took place; the extent to which the purported conspiracies share a common objective; and, the degree to which interdependence is needed for the overall operation to succeed.

*Commonwealth v. Rivera*, 238 A.3d 482, 504 (Pa. Super. 2020) (citation omitted).

Applying the above factors to the instant case, the record reflects that Robinson was charged with conspiracy at two separate Criminal Informations. The first was at 11709-2016, for the beating and murder of Quaweay on July 29, 2016, in the home on Greene Street. *See* Criminal Information at Docket Number CP-51-CR-0011709-2016, 1/6/17, at 1. At 11709-2016, the Commonwealth charged Robinson with conspiracy to commit murder, where the overt act was "killed another" and the criminal objective was murder. *Id.*

The second was at 4367-2017, for the beating and abuse of A.A.-W. in a similar manner in the same home on Greene Street. *See* Criminal Information at Docket Number CP-51-CR-0004367-2017, 5/30/17, at 1. At 4367-2017, the Commonwealth charged Robinson with conspiracy to commit aggravated assault, where the overt act was "restrained another, assaulted another" and the criminal objectives were "assault, unlawful restraint." *Id.*

Because the record reveals that Robinson and Wright had engaged in similar, but *distinct*, conspiracies, with different objectives and overt acts, the

trial court sentenced Robinson appropriately and we grant him no relief on this claim. **See *Commonwealth v. Andrews***, 768 A.2d 309, 316 (Pa. 2001) (stating that two distinct conspiracies existed where the defendants committed three robberies, of three different individuals, at three different buildings, over a two-day period).

Based on the foregoing, we affirm Robinson's judgment of sentence.

Application for Relief denied. Judgment of Sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 5/12/2021*